FILED

2015 Jan-16  PM 03:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

IN RE:

| | | |
|---|---|---|
| **GEORGE H. JOHNSON, III,** | ) | |
| **GLORIA J. JOHNSON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case Number: 5:14-CV-02378-SGC** |
| | ) | |
| **REDSTONE FEDERAL CREDIT,** | ) | |
| **UNION, HEATH EMERSON, and** | ) | |
| **DANNY ADCOCK,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## FIRST AMENDED COMPLAINT

COME NOW George H. Johnson, III and Gloria J. Johnson, the Plaintiffs, and hereby files this First Amended Complaint against the Defendants as follows:

### Jurisdiction & Venue

1.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334 and 1367.

2.  This action also seeks a declaration that Articles 8 and 9 of Chapter 9 of Title 6 of the Alabama Code (§§ 6-9-190 through 6-9-212) are preempted by the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, in that

1

enforcement of those particular state laws conflict with and frustrate the purpose, goals, and Congressional intent of bankruptcy law to provide a fresh start to debtors.  The action for declaratory relief is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

3.      Venue is proper in the Northern District of Alabama pursuant to 28 U.S.C. § 1391 as the claims arose in this district, the Defendants transact business in this district, the Plaintiffs reside in this district, and the Plaintiffs' bankruptcy case was filed in this District.

## The Parties

4.      George H. Johnson, III and Gloria J. Johnson, the Plaintiffs, are each over the age of twenty-one (21) and are residents of Athens, Limestone County, Alabama.

5.      Defendant, Redstone Federal Credit Union, (hereinafter referred to as "Redstone"), is a federally chartered credit union (depository institution/corporation) organized under the laws of the United States with its principle place of business located at 220 Wynn Drive, Huntsville, AL 35893-0001.  Its President and Chief Executive Officer is Joseph H. Newberry.  Upon information and belief, Redstone is in the business of originating and servicing consumer loans in the State of

2

Alabama.   At all material times herein, Redstone operated and conducted business in the Northern District of Alabama and elsewhere within the State of Alabama, and nationally.

6.     Defendant Heath Emerson is over the age of twenty-one (21) and is, upon information and belief, a resident of Athens, Limestone County, Alabama.

7.     Defendant Danny Adcock is over the age of twenty-one (21) and is, upon information and belief, a resident of Athens, Limestone County, Alabama.

## Factual Allegations

8.     From 1990 through 1994, George H. Johnson and Gloria J. Johnson (hereinafter referred to as the "Johnsons") entered into several credit agreements with Redstone.  These debts were for personal, family, or household purposes.

9.     The Johnsons eventually defaulted on these loans.

10.    Redstone filed a lawsuit against the Johnsons for these debts.  The lawsuit was filed in the Circuit Court of Limestone County, Alabama and was assigned case number CV 1997-134.  C. Howard Grisham represented Redstone in that lawsuit.  The Johnsons were *pro se*.

11.   Redstone obtained a judgment against the Johnsons in the amount of $27,715.08 plus interest and court costs. The Johnsons were the sole obligors of this judgment debt.

12.   Said judgment was recorded on June 26, 1997 at Fiche 97302 at Page 77.

13.   Upon the recording, the judgment became a lien on all property owned by the Johnsons in Limestone County.

14.   On April 6, 1998, the Johnsons filed a chapter 7 case in the Northern District of Alabama, Northern Division. It was assigned case number 98-81356. In Schedule A of their petition, the Johnsons listed a mobile home and approximately one acre of land. The value listed for said property was $20,350.00. Schedule A also listed a secured claim owed to Green Tree in the amount of $23,000.00. Schedule C claimed an exemption on this property. Schedule D listed the debt owed to Green Tree. They indicated on Schedule D as well as the Statement of Intentions that they intended to reaffirm the debt.

15.   The Johnsons listed Redstone as a general unsecured, nonpriority creditor in Schedule F. Redstone's attorney, C. Howard Grisham, was also listed in Schedule F. Both Redstone and its attorney were listed on

the Matrix.

16.   On July 14, 1998, the Johnsons received a discharge.

17.   It is undisputed that Redstone received notice of the Johnsons' bankruptcy and discharge.

18.   Despite the discharge of this debt, on May 6, 2007, almost 10 years after the judgment had been discharged, Redstone filed a Motion for Revival of Judgment as provided for under Alabama law, § 6-9-190, *et seq.* Redstone was again represented by C. Howard Grisham.  The Motion recognized that the debt owed to Redstone had been discharged in bankruptcy, but that despite the discharge, the "judgment has not been paid by the Defendant(s) and that the judgment lien is still fully valid." The Circuit Court of Limestone County did not hear any testimony as to the facts underlying the Motion for Revival of Judgment.  Instead, it issued an order granting the revival on May 9, 2007 (three days after the motion was filed).  On June 7, 2007, a Certificate of Judgment, as revived, was filed in the Probate Court of Limestone County, Alabama at RLPY BK 2007, Page 40306.

19.   Upon the recording of the "revived" judgment, the judgment continued the lien on all property owned by the Johnsons in Limestone County.

20.    As a result of the lien, Redstone asserted control over the property (both real and personal) of the Johnsons.  Redstone never released the lien, despite the bankruptcy discharge.  As a result of its lien, Redstone impaired the Johnsons' rights and ownership to their property.

21.    Redstone transferred and assigned the judgment debt **and** the judgment lien to Heath Emerson and Danny Adcock (hereinafter jointly referred to as "Assignees") in or around July 25, 2013.

22.    Redstone received money for the transfer and assignment.

23.    As a result of the transfer, the Assignees then asserted control over the property (both real and personal) of the Johnsons.  The Assignees never released the lien, despite the bankruptcy discharge.  As a result of the lien, the Assignees also impaired the Johnsons' rights and ownership to their property.

24.    After the transfer, Redstone did not participate in any subsequent state court action as herein described below.

25.    On July 29, 2013, the Assignees filed an Application for Writ of Execution.  The Application sought execution against the Johnsons' property: the same property originally listed in their 1998 bankruptcy. That same day, a Writ of Execution was issued.  The Writ stated that the

6

total amount owed by the Johnsons was $74,457.11, inclusive of accrued interest, fees, and costs. The Writ also specifically stated "YOU ARE HEREBY FURTHER ORDERED, following your levy of the Real Property according to Alabama law, **to execute the judgment** in the above-styled matter upon the levied Real Property being held by you." On August 6, 2013, the Circuit Court of Limestone County issued an order granting the Application for Writ of Execution. Specifically in the Court's order, it stated that the "Sheriff shall thereupon levy said real property and **execute the judgment** in the above-styled matter against the real property."

26.   The Johnsons claimed their homestead as exempt. The Circuit Court found that the claimed homestead of the Johnsons exceeded $10,000.00 in value and ordered that a disinterested third party set off by metes and bounds the homestead exempt to the Johnsons from levy and sale. This was subsequently performed.

27.   On January 15, 2014, the Johnsons filed a Motion to Set Aside the Writ of Execution. In response to the Motion to Set Aside the Writ of Execution, the Assignees recognized that the Johnsons had filed a bankruptcy in 1998 which discharged the underlying judgment.

7

28.    However, on January 27, 2014, the Johnsons' property was levied at sale for the sum of $70,000.00.[1]   The bidders were none other than the Assignees.

29.    As a result of the execution, the Assignees have seized from the Johnsons real and personal property, including their land, a house, storage units, storm shelter, indoor and outdoor furniture, small appliances, tools, Christmas items, and other personal property.   The Assignees removed this personal property and have disposed of it.

30.    On May 20, 2014, the Circuit Court denied the Johnsons' Motion to Set Aside the Writ of Execution and ordered the Sheriff to issue a deed in accordance with the execution.   The Johnsons subsequently appealed that decision to the Alabama Court of Civil Appeals.[2]

31.    The issue on appeal to the Alabama Court of Civil Appeals is whether or not the Circuit Court of Limestone County erred when it failed to set aside the writ of execution.   Redstone is not a party to that appeal.

32.    On September 5, 2014, the Johnsons filed a Motion to Reopen their

---

[1]  The sale was made contingent upon further order from the Circuit Court.

[2]  That appeal is currently pending before the Alabama Court of Civil Appeals.  It has been consolidated with another appeal of the Johnsons who appealed a subsequent order of the Circuit Court.

1998 bankruptcy case to pursue discharge violations, and other remedies in bankruptcy court against Redstone and the Assignees. This Motion was filed because the bankruptcy court required the bankruptcy case to be reopened before any adversary proceeding could be filed.

33. On November 10, 2014, the bankruptcy court denied the Johnsons' Motion to Reopen. On November 14, 2014 and again on November 24, 2014, the Johnsons asked the bankruptcy court to reconsider, but the bankruptcy court nevertheless denied their Motion to Reopen.

34. The Johnsons appealed that decision and Redstone cross-appealed.

35. This Complaint is being filed to preserve the Johnsons' claims against the Defendants.

36. As a result of Redstone's failure to release the lien and assigning the lien and discharged judgment to the Assignees, it also caused the Johnsons to lose their real and personal property as herein described.

37. At all times relevant herein, the Johnsons were in default under the terms of the various notes and loans.

38. Redstone and the Assignees have caused the debt to continue in the stream of commerce and have caused it to appear to be collectible against the Johnsons.

39.   The judgment debt has never been satisfied and the judgment lien has never been released, even after the execution occurred.  As a result, a lien remains against the remainder of the Johnsons' property and a balance remains on the debt.

40.   At all times relevant herein, both Redstone and the Assignees knew of the Johnsons' 1998 bankruptcy case and their discharge.

41.   Defendants have collected approximately $70,000.00 from the Johnsons and are currently attempting to collect the balance of the debt despite the discharge.  Asa result of the execution of the judgment, the Defendants collected the after-acquired equity and appreciation in the Johnsons' real property.

42.   At all times relevant herein, the Assignees are each a debt collector as that term is defined in the Fair Debt Collection Practices Act.

### Count One
### Contempt for Discharge Injunction Violation(s)

43.   Plaintiffs incorporate, reaver and reallege each of the foregoing paragraphs as if fully set out herein.

44.   As a result of the many actions of each of the Defendants as set out hereinabove, each of the Defendants have willfully violated the

discharge injunction.

45.   Each of the Defendants continue to willfully violate the discharge injunction because the lien has never been released and the debt never satisfied.

46.   Because of the Defendants' willful actions, the Plaintiffs have suffered injuries consisting of, but not limited to, emotional distress, loss of use of their real and personal property, loss of equity and appreciation, attorney's fees and costs, transportation costs, trespass and conversion of their personal property, lost their real property, and other expenses.

47.   Because of the Defendants' actions, Plaintiffs were forced to hire counsel to prosecute their claims and defend their interests in state and federal courts.

48.   The actions of the Defendants in continuing to collect a discharged debt as alleged herein constitutes willful and intentional violations of 11 U.S.C. § 524 and is remediable pursuant to 11 U.S.C. § 105 and/or § 524.

49.   As a result of the above actions as described herein, Plaintiffs seek sanctions against each of the Defendants in the form of actual, compensatory, and punitive damages, legal fees and costs or such other

sanctions as the Court deems necessary.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request this Honorable Court to hold each of the Defendants in contempt for violating said discharge order and to further sanction each of the Defendants for said contempt by awarding sanctions against them in the form of actual damages, punitive damages, costs, and a reasonable attorney's fee and for such further relief as this Court deems necessary and just.

## Count Two
### Violations of the Fair Debt Collections Practices Act

50.     Plaintiffs incorporate, reaver and reallege each of the foregoing paragraphs as if fully set out herein.

51.     Each of the Assignees is a debt collector as defined by the Fair Debt Collection Practices Act.

52.     The Plaintiffs aver that the loans made the basis of the judgment as well as the judgment were in default prior to, during, and after the Assignees began their collection efforts.

53.     The acts and omissions of the Assignees constitute numerous and multiple violations of the Fair Debt Collection Practices Act ("FDCPA") with respect to the Plaintiffs, including the following:

a.    Assignees collected and demanded payment from the Plaintiffs even though said debt had been discharged;

b.    Assignees engaged in conduct, the natural consequence of which was to harass, oppress, or abuse the Plaintiffs;

c.    Assignees misrepresented the character, amount, and legal status of the debt as being due and owing immediately, when, in fact, the debt had been discharged and was not due;

d.    Assignees used false, deceptive, and/or misleading methods as set out herein in order to collect or attempt to collect the alleged debt even though said debt is not legally enforceable against the Plaintiffs in violation of § 1692e(10);

e.    Assignees have used false representations and deceptive means to collect or attempt to collect the alleged debt;

f.    Assignees have collected money on a discharged debt in violation of § 1692f(1) since the debt had been discharged.

54.    At the time the Assignees made these representations to the Plaintiffs, they knew, or should have known, that said representations were false.

13

Said representations made by Defendants were made recklessly, willfully, and/or intentionally.

55. Assignees used false, deceptive or misleading representations or means with regard to the collection or attempted collection of the debt.

56. Assignees had a duty pursuant to the FDCPA to investigate whether the debt had been discharged and was therefore collectible but it failed to do so in violation of the Act.

57. Assignees knew, or should have known, that said the debt was unenforceable and the representations and actions taken by Defendants were false, deceptive and/or misleading. Said representations in those communications made by Defendants were made recklessly, willfully, and/or intentionally.

58. Because of the Assignees' actions as herein described, the Plaintiffs have suffered injuries as described herein.

59. Because of the Assignees' actions, Plaintiffs were forced to hire counsel to prosecute their claims and defend their interests in state and federal courts.

60. As a result of the above actions as described herein, Defendants is liable to the Plaintiffs for statutory, actual, compensatory, and punitive

damages, legal fees and costs.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request this Honorable Court to enter judgment against each of the Assignees, jointly and severally, for statutory, actual, compensatory, and punitive damages, costs, and a reasonable attorney's fee and for such further relief as this Court deems necessary and just.

### Count Three
### Negligence and/or Wantonness

61.  Plaintiffs incorporate, reaver and reallege each of the foregoing paragraphs as if fully set out herein.

62.  Each of the Defendants had a duty not to interfere or circumvent the Johnsons' fresh start guaranteed by the Bankruptcy Code.

63.  Each of the Defendants breached this duty when each or all of them (combined and/or concurred) acted as described hereinabove.

64.  As a result of the actions complained of herein, the Plaintiffs have suffered injuries as herein described.  Plaintiffs were forced to hire counsel to prosecute their claims and defend their interests in state and federal courts.

65.  As a result, each of the Defendants have acted negligently and/or wantonly.

66.   As a direct result of Defendants' actions, the Plaintiffs have been harmed and injured as herein described.

67.   As a result, Defendants are liable to Plaintiffs for actual, compensatory, and punitive damages, legal fees and costs.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request this Honorable Court to enter judgment against each of the Defendants for actual damages, punitive damages, costs, and a reasonable attorney's fee and for such further relief as this Court deems necessary and just.

### Count Four
### Conversion

68.   Plaintiffs incorporate, reaver and reallege each of the foregoing paragraphs as if fully set out herein.

69.   As a result of the actions of each of the Defendants as described hereinabove, each of the Defendants wrongfully took, detained, interfered with the ownership of Plaintiffs' personal property as herein described, and/or illegally or wrongfully used or misused the Johnsons' personal property.

70.   At the time the lien was placed on their property and continuing thereafter, the Johnsons had the right to the property and an immediate

right of possession to their property.

71.   The actions of each of the Defendants resulted in the conversion of the Johnsons' personal property.

72.   As a direct result of Defendants' actions, the Plaintiffs have been harmed and injured as herein described.  Additionally, Plaintiffs have been permanently deprived of the use of their personal property.

73.   As a result of the above actions as described herein, Defendants are liable to Plaintiffs for actual, compensatory, and punitive damages, legal fees and costs.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request this Honorable Court to enter judgment against each of the Defendants for actual damages, punitive damages, costs, and a reasonable attorney's fee and for such further relief as this Court deems necessary and just.

## Count Five
### Trespass to Real Property

74.   Plaintiffs incorporate, reaver and reallege each of the foregoing paragraphs as if fully set out herein.

75.   As a result of the actions of each of the Defendants as described hereinabove, each of the Defendants wrongfully took, detained, retained,

deprived, or otherwise interfered with the ownership of Plaintiffs' real property as herein described.

76.   Defendants knew or should have known that their actions would result in the deprivation of the Plaintiffs' ownership, use, and possession of their real property.

77.   As a direct result of Defendants' actions, the Plaintiffs have been harmed and injured as herein described.  Additionally, Plaintiffs have been permanently deprived of the use of their real property.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request this Honorable Court to enter judgment against each of the Defendants for compensatory or actual damages, punitive damages, costs, and a reasonable attorney's fee and for such further relief as this Court deems necessary and just.

### Count Six
### Trespass to Personal Property

78.   Plaintiffs incorporate, reaver and reallege each of the foregoing paragraphs as if fully set out herein.

79.   As a result of the actions of each of the Defendants as described hereinabove, each of the Defendants wrongfully took, detained, retained, deprived, or otherwise interfered with the ownership of Plaintiffs'

personal property as herein described.

80.    Defendants knew or should have known that their actions would result in the deprivation of the Plaintiffs' ownership, use, and possession of their personal property.

81.    As a direct result of Defendants' actions, the Plaintiffs have been harmed and injured as herein described.  Additionally, Plaintiffs have been permanently deprived of the use of their personal property.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request this Honorable Court to enter judgment against each of the Defendants for compensatory or actual damages, punitive damages, costs, and a reasonable attorney's fee and for such further relief as this Court deems necessary and just.

## Count Seven
### Declaratory Judgment

82.    Plaintiffs incorporate, reaver and reallege each of the foregoing paragraphs as if fully set out herein.

83.    There is an actual and justiciable controversy relating to the legal rights, duties, and remedies of Plaintiffs and Defendants with regard to the application of Alabama state law and federal bankruptcy law.

84.    Alabama Code § 6-9-191 provides that a creditor may revive a judgment

if 10 years have elapsed from the entry of the judgment without issue of execution. Ala. Code § 6-9-191. The statute further provides that if it is not revived, then the judgment is presumed satisfied. *Id.* It also states that the burden of providing that the judgment is not satisfied or otherwise discharged is upon the creditor/plaintiff. *Id.*

85. Section 6-9-192 requires the judgment to be revived before execution on the judgment can occur. Ala. Code § 6-9-192.

86. Alabama law also provides that a judgment may be assigned to another party, and that party has the same right to execute on the judgment as the transferring party. Ala. Code § 6-9-196.

87. An owner of any judgment may file a certificate of judgment in the probate court of any county in this State. Ala. Code § 6-9-210. Upon the filing of the certificate of judgment, the judgment "shall be a lien in the county where filed on all property of the defendant which is subject to levy and sale under execution; and such lien shall continue for 10 years." Ala. Code § 6-9-211. Upon revival of the judgment, a new certificate of judgment can be filed in the probate court of any county and said revived certificate also constitutes a lien on all property of the defendant which is subject to levy and sale. *Id.*

88.  Federal bankruptcy law guarantees a fresh start for bankrupt debtors.

89.  A discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2).  Furthermore, a discharge "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged." 11 U.S.C. § 524(a)(1).

90.  While the bankruptcy code is silent as to the discharge's effect on a lien, there exists a conflict between the federal law's guarantee of a fresh start and the continuation of a lien for a debt for which there exists no personal obligation to pay said debt.

91.  The facts as alleged herein are at the heart of this conflict.  Even though the Johnsons' discharge extinguished their personal liability, and even though the Johnsons were the sole obligors on the judgment debt, the judgment lien continued, encumbering their real and personal property.

92.  As a result of the lien, the Defendants took the Plaintiffs' property and caused them harm as set out hereinabove.

93.  Additionally, federal bankruptcy law is irreconcilable with Alabama law

which requires that debts be revived in order to maintain a lien on property.

94.   While Redstone was authorized to revive the judgment pursuant to Alabama law, federal bankruptcy law "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor." 11 U.S.C. § 524(a)(1).

95.   In order to revive the judgment, Redstone had to prove that the debt was still owed by the Johnsons. Ala. Code § 6-9-191. Redstone's actions in reviving the debt and continuing the lien on the property irreconcilably conflict with the federal bankruptcy law which voids that judgment.

96.   A discharge releases a "debtor from personal liability on the debt. Without the debt, there is nothing to secure and no basis for the lien." *Ogburn v. SouthTrust Bank (In re Ogburn)*, 212 B.R. 984, 986 (Bankr. M.D. Ala. 1995). A discharge, then, releases the debtors from the debt to the creditor represented by the judgment. The effect of the release from the judgment debt is to extinguish the judgment lien. *Duncan v. Gunter Ins. Agency (In re Duncan)*, 60 B.R. 345, 348 (Bankr. M.D. Ala. 1986).

97.   Under Alabama law, a lien cannot exist independently of a debt.

*Daugherty v. Campbell*, 2014 Ala. Civ. App. LEXIS 52, *9-10 (Ala. Civ. App. Mar. 21, 2014).

98.   The state laws regarding judgment liens should be preempted by the federal bankruptcy laws because the state laws irreconcilably conflict with the purpose, goals, and guarantees afforded by the bankruptcy code.

99.   The controversy between the Plaintiffs and Defendants is imminent and ongoing, and a declaratory judgment is necessary to resolve the rights and duties of the parties.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request this Honorable Court declare the federal bankruptcy law preempts state law regarding judgment liens and hold that the revival of the judgment was void *ab initio*, the lien was extinguished at the time of bankruptcy discharge, and that the state laws are otherwise unenforceable.

## **Count Eight**
### **Attorney's Fees**

100.   Plaintiffs incorporate, reaver and reallege each of the foregoing paragraphs as if fully set out herein.

101.   As a result of the Defendants' actions and inactions (as the case may be)

as set out hereinabove, the Plaintiffs were forced to hire counsel to prosecute their claims and defend their interests in state and federal courts.

102.   Plaintiffs are entitled to attorney's fees pursuant to 11 U.S.C. §§ 105(a) and other sections, statutes, and laws cited herein for this action.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request this Honorable Court to enter judgment against the Defendants for attorney's fees and costs and for such further relief as this Court deems necessary and just.

Respectfully submitted this 16th day of January 2015.

Respectfully submitted,

Robert C. Keller (ASB-7090-L57R)
Attorney for the Plaintiffs
315 Gadsden Highway, Suite D
Birmingham, AL 35235
(205) 833-2589

**_PLAINTIFFS DEMAND TRIAL BY JURY IN THIS CAUSE_**

Robert C. Keller (ASB-7090-L57R)
Attorney for the Plaintiffs

24

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Counsel for Redstone Federal Credit Union:
Timothy P. Cummins
Bradley, Arant, Boult, Cummings, LLP
200 Clinton Avenue West
Suite 900
Huntsville, AL 35801

Counsel for Assignees:
Patrick Chesnut
Chesnut & Chesnut
109 West Washington Street
Athens, AL 35611

Robert C. Keller

25