# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GEORGE H. JOHNSON, III, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:14-cv-2378-MHH** |
| | } | |
| **REDSTONE FEDERAL CREDIT** | } | |
| **UNION, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case concerns a state court-ordered levy and sale of plaintiffs George Johnson and Gloria Johnson's property in Limestone County, Alabama. In 1997, the Johnsons defaulted on consumer debt held by defendant Redstone Federal Credit Union. Redstone obtained and recorded a judgment against the Johnsons, and the judgment became a lien on the Johnsons' property in Limestone County. In 2013, Redstone sold the judgment lien to defendants Danny Adcock and Heath Emerson. Mr. Adcock and Mr. Emerson petitioned the Limestone County Circuit Court for a writ of execution to satisfy the judgment lien. The Limestone County Circuit Court ordered the sheriff to levy and sell the Johnsons' property. Mr. Adcock and Mr. Emerson bought the property at auction.

The parties' disputes have resulted in litigation in Limestone County state court, the Bankruptcy Court for the Northern District of Alabama, the United

States District Court for the Northern District of Alabama, and the Eleventh Circuit Court of Appeals. In this action, the Johnsons seek to hold Redstone, Mr. Adcock, and Mr. Emerson in contempt of a bankruptcy discharge injunction pursuant to which the Johnsons contend the judgment lien was satisfied. The Johnsons also seek a declaration that the Bankruptcy Code preempts Alabama state law regarding creation of and execution on judgment liens. The Johnsons assert Fair Debt Collection Practices Act claims against Mr. Adcock and Mr. Emerson. In addition, the Johnsons assert state law claims against all three defendants for negligence, wantonness, conversion, trespass to real property, and trespass to personal property.

On January 17, 2017, the magistrate judge, pursuant to Federal Rule of Civil Procedure 12(b)(6), entered a report in which she recommended that the Court dismiss this action with prejudice. (Doc. 42).[1] The magistrate judge advised the parties of their right to file objections within 14 days. (Doc. 42, pp. 37-38). The Johnsons filed objections. (Doc. 43). Redstone filed a response. (Doc. 46). The Johnsons filed a reply in support of their objections. (Doc. 47). Because the parties have not consented unanimously to dispositive jurisdiction by a magistrate

---

[1] The defendants also moved to dismiss the Johnsons' first amended complaint pursuant to Rules 12(b)(1), 12(b)(3), and 12(b)(7) of the Federal Rules of Civil Procedure. The magistrate judge recommended that the Court deny the motions to the extent that the motions are based these rules. (Doc. 42, pp. 14-15).

judge, the magistrate judge's report and recommendation and the Johnsons' objections are before the undersigned for review.

## I.  STANDARD OF REVIEW

A district court "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C). When a party objects to a report and recommendation, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  *Id.*  The Court reviews for plain error proposed factual findings to which no objection is made, and the Court reviews propositions of law *de novo*.  *Garvey v. Vaughn*, 993 F.2d 776, 779 n. 9 (11th Cir. 1993); *see also United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam), *cert. denied*, 464 U.S. 1050 (1984) ("The failure to object to the magistrate's findings of fact prohibits an attack on appeal of the factual findings adopted by the district court except on grounds of plain error or manifest injustice.") (internal citation omitted); *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 784 (11th Cir. 2006).

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  *See* FED. R. CIV. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a complaint—or in this case, an amended complaint—must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In considering a defendant's motion to dismiss a complaint, a district court generally accepts the plaintiff's allegations as true and asks whether the plaintiff alleges facts that allow the district court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Maledy v. City of Enter.*, 2012 WL 1028176, at *1 (M.D. Ala. Mar. 26, 2012). The Court must construe the allegations in the complaint in the light most favorable to the plaintiff. *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297 (11th Cir. 2015) (quoting *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)) (per curiam) (internal marks omitted). A district court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).

## II. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

From 1990 to 1994, George and Gloria Johnson entered into several credit agreements with Redstone for personal, family, or household purposes. (Doc. 14, ¶ 8). The Johnsons defaulted on these loans, and Redstone filed a lawsuit against the Johnsons in the Circuit Court of Limestone County, Alabama. (Doc. 14, ¶¶ 9-10;

*see also Redstone Federal Credit Union v. Johnson, et al.*, CV-97-134).[2]  On June 9, 1997, the Limestone County Circuit Court entered a consent judgment in favor of Redstone and against the Johnsons in the amount of $27,715.08.  (Doc. 1, p. 3 in CV-97-134).  The Johnsons allege that when the judgment was recorded on June 26, 1997, the judgment "became a lien on all property" that they owned in Limestone County.  (Doc. 14, ¶¶ 12, 13; *see also* Doc. 1, p. 14 in CV-97-134).

On April 6, 1998, the Johnsons filed for Chapter 7 bankruptcy in the Northern District of Alabama.  (Doc. 14, ¶ 14).  The Johnsons listed the $27,715.08 Redstone judgment as a general unsecured, nonpriority claim.  (Doc. 14, ¶ 15).  In Schedule A of their petition, the Johnsons listed a mobile home and approximately one acre of land.  The Johnsons valued this property at $20,350.00.  (Doc. 14, ¶ 14).  In Schedule A of their bankruptcy petition, the Johnsons stated that Green Tree had a secured claim on the property in the amount of $23,000.00.  (Doc. 14, ¶ 14).  In their petition, the Johnsons claimed a homestead exemption on the property, and the Johnsons stated their intention to reaffirm the debt.  (Doc. 14, ¶ 14).

---

[2] The record for the state court action is available on the Alacourt website.  The Court takes judicial notice of that record.  *See Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010) (district court properly took judicial notice of documents related to the plaintiff's previous civil action because the documents "were public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'") (quoting Fed. R. Evid. 201(b); other internal citations omitted).  The Court cites to entries on the Alacourt case action summary by document and case number.

On July 14, 1998, the Johnsons received a discharge from bankruptcy. (Doc. 14, ¶ 16). The discharge notice states:

> This discharge prohibits any attempt to collect from the debtors a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtors. A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

> However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtors' property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case.

(Doc. 5-6, p. 2 in 15-cv-150-LSC).[3]

On May 3, 2007, pursuant to Alabama Code Sections 6-9-190 through 192, Redstone filed in Limestone County Circuit Court a motion for revival of the June 9, 1997 judgment. (Doc. 14, ¶ 18; Doc. 1, p. 12 in CV-97-134).[4] Redstone stated that it filed the motion "for the purpose of lien continuity on real estate" that the

---

[3] Case 15-cv-150-LSC is the Johnsons' 2015 appeal from an order of the Bankruptcy Court. The Court takes judicial notice of that record. *See United States v. Glover*, 179 F.3d 1300, 1302 n. 5 (11th Cir. 2009) ("A court may take judicial notice of its own records and the records of inferior courts.").

[4] Alabama Code Section 6-9-190 states that "[a] judgment cannot be revived after the lapse of 20 years from its entry." Ala. Code § 6-9-190. Section 6-9-191 states that "[i]f 10 years have elapsed from the entry of the judgment without issue of execution or if 10 years have elapsed since the date of the last execution issued, the judgment must be presumed satisfied, and the burden of proving it not satisfied is upon the plaintiff." Ala. Code § 6-9-191. Section 6-9-192 states that "[n]o execution shall issue on a judgment of the district or circuit court on which an execution has not been sued out within 10 years of its entry until the same has been revived by appropriate motion or action under the Alabama Rules of Civil Procedure." Ala. Code § 6-9-192.

Johnsons owned. (Doc. 1, p. 12 in CV-97-134). In their first amended complaint, the Johnsons state that Redstone's motion "recognized that the debt owed to Redstone had been discharged in bankruptcy." (Doc. 14, ¶ 18). In the motion, Redstone acknowledged that the Johnsons had filed and been discharged from bankruptcy, but Redstone asserted that "the lien passed through the bankruptcy unaffected." (Doc. 1, p. 12 in CV-97-134) (citing *Dewsnup v. Timm*, 112 S. Ct. 773 (1993), and *In re Wrenn*, 40 F.3d 1162 (11th Cir. 1994)). In the motion, Redstone stated that the Johnsons had not paid the judgment and "that the judgment lien is still fully valid." (Doc. 1, p. 12 in CV-97-134). Redstone asked the Court to revive the judgment for an additional 10 years. (Doc. 1, p. 12 in CV-97-134).

Without hearing testimony regarding the facts underlying Redstone's motion, on May 9, 2007, the Limestone County Circuit Court entered an order granting Redstone's motion and reviving the June 9, 1997 judgment. (Doc. 14, ¶ 18; Doc. 1, p. 12 in CV-97-134). On June 7, 2007, Redstone filed in the Probate Court of Limestone County, Alabama a certificate of judgment, as revived. (Doc. 14, ¶ 18). The Johnsons allege that upon the recording of the revived judgment, the judgment "continued the lien on all property" that the Johnsons owned in Limestone County. (Doc. 14, ¶ 19). The Johnsons contend that because of the revived lien, Redstone "asserted control" over the Johnsons' real and personal

property and "impaired the Johnsons' rights and ownership to their property."
(Doc. 14, ¶ 20).

On July 25, 2013, Redstone sold the judgment debt and the judgment lien to
Heath Emerson and Danny Adcock.  (Doc. 14, ¶¶ 21, 22; Doc. 6 in CV-97-134).
According to the Johnsons, after the transfer, Redstone did not participate in the
Limestone County state court action.  (Doc. 14, ¶ 24).  The Johnsons allege that as
a result of the transfer, Mr. Emerson and Mr. Adcock "asserted control" over the
Johnsons' real and personal property and "impaired the Johnsons' rights and
ownership to their property."  (Doc. 14, ¶ 23).

On July 29, 2013, Mr. Emerson and Mr. Adcock filed an application for writ
of execution in Limestone County Circuit Court.  (Doc. 14, ¶ 25; Doc. 5 in CV-97-
134).   The application states that Mr. Emerson and Mr. Adcock seek "a writ of
execution against the real property which the Lien Holders retain a perfected
judgment in rem."  (Doc. 5 in CV-97-134).  The application describes the property
upon which law enforcement should execute.  (Doc. 5 in CV-97-134).

On August 5, 2013, the Limestone County Circuit Court granted the
application for writ of execution.   (Doc. 13, p. 4 in CV-97-134).[5]   The order
instructed the clerk of court to "issue a writ of execution against the real property

_____

[5] In their first amended complaint, the Johnsons state that the Limestone County Circuit Court
entered an order granting the application for writ of execution on August 6, 2013.  (Doc. 14, ¶
25).  The circuit court's order is dated August 5, 2013.  (Doc. 13, p. 4 in CV-97-134).

described in the application for writ of execution." (Doc. 13, p. 4 in CV-97-134). The order authorized the Sheriff to "levy said real property and execute the judgment . . . against said real property." (Doc. 13, p. 4 in CV-97-134). The order also instructed the clerk of court to designate Mr. Emerson and Mr. Adcock "as those parties who now hold the judgment." (Doc. 13, p. 4 in CV-97-134).

On August 6, 2013, the Limestone County Circuit Clerk issued a writ of execution of judgment. (Doc. 13, pp. 1-2 in CV-97-134).[6] The writ stated that the Johnsons owed $74,457.11 which included the original judgment amount, interest, fees, and costs. (Doc. 13, p. 1 in CV-97-134). The writ ordered any law enforcement officer in the State of Alabama "immediately to levy" the same property described in the application for writ of execution. (Doc. 13, pp. 1-2 in CV-97-134).

On August 7, 2013, a Limestone County sheriff's deputy levied the real property described in the writ of execution by serving notice of the writ of execution on the Johnsons. (Doc. 16, p. 1 in CV-97-134). The deputy also provided to the Johnsons notice of their exemption rights. (Doc. 16, p. 1 in CV-97-134). On August 16, 2013, the Johnsons filed a notice of homestead exemption

---

[6] In their first amended complaint, the Johnsons state that the clerk issued the writ of execution on July 29, 2013. (Doc. 14, ¶ 25). A stamp on the top right corner of the document suggests that the clerk electronically filed the document on July 29, 2013, but the writ is dated August 6, 2013. (Doc. 13, pp. 1-2 in CV-97-134).

with the Limestone County Sheriff's Office.  (Doc. 14, ¶ 26; Doc. 16, pp. 2, 5 in CV-97-134).

On August 29, 2013, the Johnsons filed a new Chapter 7 bankruptcy petition in the Northern District of Alabama.  (Doc. 1 in 13-82668-JAC7, *In re Johnson*). On September 3, 2013, the Johnsons filed a suggestion of bankruptcy in the Limestone County Circuit Court.  (Doc. 23 in CV-97-134).   On September 9, 2013, the Limestone County Circuit Court stayed proceedings pending further order from the Bankruptcy Court.  (Doc. 27 in CV-97-134).

On October 3, 2013, in the bankruptcy action, the Johnsons filed a motion to avoid the Limestone County judicial lien pursuant to 11 U.S.C. § 522(f)(1)(A). (Doc. 20 in 13-82668-JAC7).  Mr. Emerson and Mr. Adcock opposed the motion. (Doc. 31 in 13-82668-JAC7).   On November 5, 2013, the Bankruptcy Court entered an order in which it stated that it "abstains from consideration of the claims and disputes by and between the parties pursuant to 28 U.S.C. § 1334 and lifts the stay to allow the parties to proceed with their remedies against each other in state court."  (Doc. 36 in 13-82668-JAC7).

In light of the Bankruptcy Court's order lifting the automatic stay, on November 20, 2013, the Limestone County Circuit Court placed its action back on the active docket.  (Doc. 34 in CV-97-134).   On November 25, 2013, the Limestone County Circuit Court conducted a trial on the Johnsons' claim of

exemptions. The Limestone County Circuit Court found that the homestead exemption exceeded $10,000 in value, and therefore, the state court ordered that the Johnsons' residence be set off by metes and bounds the homestead exempt from the levy and sale. (Doc. 36 in CV-97-134).

On January 15, 2014, pursuant to Rule 60(b) of the Alabama Rules of Civil Procedure, the Johnsons filed in Limestone County Circuit Court a motion to set aside the writ of execution. (Doc. 14, ¶ 27; Doc. 39 in CV-97-134). In the motion, the Johnsons stated that they were discharged from bankruptcy on July 14, 1998. (Doc. 39, ¶ 3 in CV-97-134). The Johnsons argued that pursuant to Alabama Rule of Civil Procedure 60(b)(5), "the judgment should be considered satisfied or discharged." (Doc. 39, ¶ 6 in CV-97-134). The Johnsons maintained that when Redstone filed its May 3, 2007 motion to revive judgment, Redstone failed to carry its burden under Alabama Code Sections 6-9-191 and 192 of establishing that the Johnsons had not paid the judgment. (Doc. 39, ¶¶ 6-11 in CV-97-134). In addition, the Johnsons argued that the revived judgment was void pursuant to Alabama Rule of Civil Procedure 60(b)(4) because Redstone did not properly serve the Johnsons with a copy of the motion, and therefore the state court lacked jurisdiction to rule on the motion to revive judgment. (Doc. 39, ¶¶ 12-18 in CV-97-134).

In their first amended complaint, the Johnsons allege that in response to their motion to set aside the writ of execution, Mr. Emerson and Mr. Adcock "recognized that the Johnsons had filed a bankruptcy in 1998 which discharged the underlying judgment." (Doc. 14, ¶ 27). The Court has reviewed Mr. Emerson and Mr. Adcock's responses to the Johnsons' motion to set aside the writ of execution. (Doc. 46 in CV-97-134; Doc. 51 in CV-97-134). Mr. Emerson and Mr. Adcock acknowledge that the Johnsons filed for bankruptcy, but Mr. Emerson and Mr. Adcock assert that the Johnsons' personal discharge in bankruptcy does not constitute satisfaction and discharge of the judgment lien because the bankruptcy discharge did not affect in rem claims against the Johnsons' property. (Doc. 46, pp. 7-9 in CV-97-134; Doc. 51, pp. 1-2 in CV-97-134). The Court finds no assertion in Mr. Emerson and Mr. Adcock's responses that the Johnsons' 1998 bankruptcy discharged the underlying judgment.

On January 27, 2014, during a conference call with counsel for the Johnsons and Mr. Emerson and Mr. Adcock, the Limestone County Circuit Court ordered the Limestone County Sheriff to conduct the execution sale on January 27, 2014, but the Limestone County Circuit Court conditioned the sale on the Johnsons' pending motion to set aside the writ of execution. (Doc. 44 in CV-97-134). On January 27, 2014, the Limestone County Sheriff sold the Johnson's real property to Mr. Emerson and Mr. Adcock. (Doc. 14, ¶ 28; Doc. 43, pp. 5-7 in CV-97-134).

The Johnsons contend that as a result of the execution, Mr. Emerson and Mr. Adcock "have seized from the Johnsons real and personal property, including their land, a house, storage units, storm shelter, indoor and outdoor furniture, small appliances, tools, Christmas items, and other personal property." (Doc. 14, ¶ 29). The Johnsons allege that Mr. Emerson and Mr. Adcock "removed this personal property and have disposed of it." (Doc. 14, ¶ 29).[7]

On May 20, 2014, the Limestone County Circuit Court entered an order denying the Johnsons' motion to set aside execution of judgment. In the order, the state court explained that it considered the arguments that counsel presented during an April 2, 2014 hearing and the pleadings on file with the court. (Doc. 54 in CV-97-134). In the May 20, 2014 order, the Limestone County Circuit Court removed the contingency that the court had placed on the Sheriff's sale and confirmed the Sheriff's sale of the Johnsons' real property. The state court ordered the Sheriff to issue a deed consistent with the sale within five days. (Doc. 54 in CV-97-134).

The Johnsons appealed the Limestone County Circuit Court's May 20, 2014 order to the Alabama Court of Civil Appeals. (Doc. 14, ¶ 30; Doc. 107 in CV-97-134). On July 10, 2015, the Alabama Court of Civil Appeals issued a written

---

[7] An affidavit that the Limestone County Sheriff submitted with his return of executed writ states that the he executed the writ of execution "by selling the following described real property. . . to Heath Emerson and Danny Adcock at public auction." (Doc. 43, p. 6 in CV-97-134). The Sheriff's affidavit does not suggest that he sold personal property belonging to the Johnsons. The Sheriff's affidavit indicates that the real property included an easement to use a storm shelter on the property. (Doc. 43, p. 7 in CV-97-134).

decision in which it dismissed the Johnsons appeal as untimely. The Alabama Court of Civil Appeals did not reach the merits of the Limestone County Circuit Court's decision not to set aside the writ of execution. (Doc. 129 in CV-97-134).

While the Johnsons' state court appeal was pending before the Alabama Court of Civil Appeals, on September 5, 2014, the Johnsons filed a motion to reopen their 1998 bankruptcy case to pursue alleged discharge violations and other remedies against Redstone, Mr. Emerson, and Mr. Adcock. (Doc. 14, ¶ 32; Doc. 12 in 98-81356-CRJ7).[8] On November 10, 2014, the Bankruptcy Court entered an order denying the Johnsons' motion. In its memorandum opinion and order, the Bankruptcy Court stated that the Johnsons' "1998 discharge of their personal debt to Redstone did not discharge or satisfy the judgment lien." (Doc. 30, p. 6 in 98-81356-JAC7; Doc. 4-13, p. 6 in 15-cv-150-LSC). The Bankruptcy Court found that Redstone's judgment lien attached in rem to the subject property and the revival of the judgment did not violate the discharge injunction. (Doc. 30, p. 6 in 98-81356-JAC7; Doc. 4-13, p. 6 in 15-cv-150-LSC). The Bankruptcy Court also found that the Johnsons were estopped from pursuing discharge violations against Redstone, Mr. Emerson, and Mr. Adcock in the bankruptcy proceeding. (Doc. 30,

---

[8] Case 98-81356-CRJ7 is the Johnsons' 1998 bankruptcy case. The Court takes judicial notice of that record. *See Glover*, 179 F.3d at 1302 n. 5.

p. 7 in 98-81356-JAC7; Doc. 4-13, p. 7 in 15-cv-150-LSC).  The Bankruptcy Court

explained:

> On November 5, 2013, the Court lifted the stay in the debtors'
> pending 2013 bankruptcy proceeding and abstained to allow the same
> parties to proceed in the Circuit Court with their rights and remedies
> against each other.  The debtors did not appeal the order and same is
> now final.  The same arguments regarding the validity of Redstone's
> judgment lien following the debtors' 1998 bankruptcy discharge and
> the 2007 lien renewal were presented in the Circuit Court.  On May
> 20, 2014, the Circuit Court entered an order denying debtors' motion
> to set aside execution of judgment and confirmed the Sheriff's sale of
> the subject property. That order is currently on appeal and will be
> finally determined in state court.

(Doc. 30, p. 7 in 98-81356-JAC7; Doc. 4-13, p. 7 in 15-cv-150-LSC).

On November 14, 2014, the Johnsons asked the Bankruptcy Court to set

aside its opinion and order denying the Johnsons' motion to reopen the 1998

bankruptcy case.  (Doc. 34 in 98-81356-JAC7; Doc. 4-15 in 15-cv-150-LSC).  In

support of their argument, the Johnsons cited another bankruptcy appeal decision

issued by the district court which held that 1) under Alabama law, a judgment lien

does not attach to a debtor's real property pre-petition when the debtor's equity in

the property is less than the total value of all senior liens, plus applicable

exemptions, and 2) because the creditor failed to object to the debtors' summary of

schedules listing the debt as "unsecured," the creditor waived argument concerning

the value of the property, the nature of senior mortgages, or the extent to which the

lien in question attached to the property pre-petition and passed through

bankruptcy unaffected.  (Doc. 34 in 98-81356-JAC7; Doc. 4-15 in 15-cv-150-LSC) (citing *In re McDonald*, 2009 WL 10694964 (N.D. Ala. 2009)).

In light of the Johnsons' submission and "[a]fter careful review" of the *McDonald* decision, on November 20, 2014, the Bankruptcy Court granted the Johnsons' motion to set aside the court's November 10, 2014 memorandum opinion and order.  (Doc. 35 in 98-81356-JAC7; Doc. 4-16 in 15-cv-150-LSC; *see also* Doc. 14, ¶ 33).  But the Bankruptcy Court again denied the Johnsons' motion to reopen their 1998 bankruptcy, and pursuant to 28 U.S.C. § 1334(c)(1), the Bankruptcy Court abstained "to allow the parties to proceed with their remedies against each other in their pending state court action."  (Doc. 35 in 98-81356-JAC7; Doc. 4-16 in 15-cv-150-LSC; *see also* Doc. 14, ¶ 33).[9]

The Johnsons asked the Bankruptcy Court to alter or amend the November 20, 2014 order and to enter an order allowing the Johnsons to reopen their 1998 bankruptcy to pursue discharge violations.  (Doc. 37 in 98-81356-JAC7; Doc. 4-17 in 15-cv-150-LSC).  On November 26, 2014, the Bankruptcy Court denied the Johnsons' motion.  (Doc. 38 in 98-81356-JAC7; Doc. 4-18 in 15-cv-150-LSC).

---

[9] 28 U.S.C. § 1334(c)(1) states:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The Johnsons appealed the Bankruptcy Court's November 26, 2014 decision to district court. (Doc. 39 in 98-81356-JAC7; Doc. 4-19 in 15-cv-150-LSC). Redstone filed a cross appeal seeking to reinstate the Bankruptcy Court's November 10, 2014 memorandum opinion and order. (Doc. 5-25 in 15-cv-150-LSC).

While the Bankruptcy Court's decision was on appeal to the district court, on December 10, 2014, the Johnsons filed their complaint in this action "to preserve [their] claims against" Redstone, Mr. Emerson, and Mr. Adcock. (Doc. 1, ¶ 27). On May 11, 2015, the magistrate judge to whom this case was assigned stayed the case pending resolution of the state court appeal from the writ of execution and the federal court bankruptcy appeal. (Doc. 27).

On June 29, 2015, the district court presiding over the bankruptcy appeal entered a memorandum opinion and order in which it held that the Bankruptcy Court did not clearly abuse its discretion when the Bankruptcy Court denied the Johnsons' motion to reopen their 1998 bankruptcy proceedings to file a complaint alleging discharge violations based on the execution of the judgment lien in Limestone County. (Doc. 14, p. 9 in 15-cv-150; *see also* Doc. 28).

The parties appealed the district court's decision to the Eleventh Circuit. The Eleventh Circuit dismissed the appeal and cross appeal because the Court lacked jurisdiction to consider the Bankruptcy Court's decision to abstain. (Doc.

27 in 15-cv-150-LSC) (citing 28 U.S.C. § 1334(d) ("Any decision to abstain or not to abstain made under section [1334(c)] . . . is not reviewable by appeal or otherwise by the court of appeals.")).[10]

On February 26, 2016, the magistrate judge lifted the stay in this action and allowed the defendants to file amended motions to dismiss in light of the conclusion of the state court and federal court appeals. (Doc. 34). Redstone filed an amended motion to dismiss. (Doc. 35). Mr. Emerson and Mr. Adcock did not file an amended motion to dismiss.

## III. DISCUSSION

In their first amended complaint, the Johnsons assert claims for contempt of the Bankruptcy Court's discharge injunction, violations of the Fair Debt Collection Practices Act, negligence and wantonness, conversion, trespass to real property, and trespass to personal property. The Johnsons also seek a declaration that the Bankruptcy Code preempts Alabama laws regarding judgment liens and attorneys' fees.

---

[10] In her report, the magistrate judge stated that the "Eleventh Circuit dismissed the Johnsons' appeal from the district court's decision on the ground that appeals from bankruptcy lie in the district court, and there is no right of appeal to the federal circuit court." (Doc. 42, p. 9). That statement is too broad; the bar on appeals to appellate courts from district court orders concerning bankruptcy appeals pertains to orders of abstention. Because the Johnsons objected to this factual finding (Doc. 43, p. 7), the Court corrects the record, but the basis of the Eleventh Circuit's holding does not impact the Court's analysis with respect to the merits of the Johnsons' claims.

## A. Contempt

In count one of their first amended complaint, the Johnsons ask the Court to hold Redstone, Mr. Emerson, and Mr. Adcock in contempt for violating the Bankruptcy Court's discharge order and to sanction the defendants for those violations. (Doc. 14, p. 12). The Johnsons object to the magistrate judge's finding that their contempt claim fails to state a claim because 11 U.S.C. § 105 does not create private right of action for violations of 11 U.S.C. § 524. (Doc. 43, p. 11).

The Eleventh Circuit has not directly considered the issue, but as the magistrate judge explained, a number of courts have held that neither § 105 nor § 524 authorizes private causes of action to remedy bankruptcy discharge violations. (Doc. 42, p. 24) (citing *Pereira v. First N. Am. Nat. Bank*, 223 B.R. 28, 30 (N.D. Ga. 1998) ("Section 524 does not expressly allow for damages, costs, or create a private right of action in a district court other than the court having jurisdiction of the underlying bankruptcy action."). This holding is consistent with Eleventh Circuit precedent which establishes that a bankruptcy discharge injunction is not this Court's to enforce.

"It is settled that 'the court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order,' and this 'power to sanction contempt is jurisdictional.'" *See In re McLean*, 794 F.3d 1313, 1318-19 (11th Cir. 2015) (quoting *Alderwoods Grp., Inc. v. Garcia,* 682 F.3d 958,

970 (11th Cir. 2012)).   In *Alderwoods*, the Eleventh Circuit concluded that a Florida bankruptcy court lacked jurisdiction to hear the debtors' complaint that the creditors' actions violated a Delaware bankruptcy court's discharge injunction. *Alderwoods Grp., Inc.*, 682 F.3d at 971.  The Alderwoods Court explained:

> [T]he court that enters an injunctive order retains jurisdiction to enforce its order. In this respect, a bankruptcy court is no different than any other federal court, which possesses the inherent power to sanction contempt of its orders. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 50, 111 S. Ct. 2123, 2136, 115 L. Ed. 2d 27 (1991). The bankruptcy court that confirms a reorganization plan thus enters an injunctive order—the confirmation order, *see* 11 U.S.C. §§ 524, 1141—the violation of which it can sanction. That said, although a federal court's injunction applies nationwide, "[v]iolation of an injunctive order is cognizable *in the court which issued the injunction.*" *Waffenschmidt v. MacKay,* 763 F.2d 711, 716 (5th Cir. 1985) (quoting *Stiller v. Hardman,* 324 F.2d 626, 628 (2d Cir. 1963)) (alteration in original) (emphasis added) (quotation marks omitted); *see also Cox,* 239 F.3d at 915 ("the creditor who attempts to collect a discharged debt is violating not only a statute but also an injunction and is therefore in contempt of the bankruptcy court *that issued the order of discharge.*" (emphasis added)).

*Alderwoods Grp., Inc.*, 682 F.3d at 970.

In *Jones v. CitiMortgage, Inc.*, the Eleventh Circuit considered a similar issue.  666 Fed. Appx. 766 (11th Cir. 2016).  The plaintiff filed a complaint in district court in which he alleged that a creditor violated a bankruptcy discharge injunction by attempting to hold him personally liable for mortgage debt.  *Jones*, 666 Fed. Appx. at 774.  The Court of Appeals found that the district court "lacked jurisdiction to entertain alleged violations of an order it did not issue" because "the

court that issued the discharge injunction is the court that alone possesses the power to enforce compliance with the discharge injunction." *Jones*, 666 Fed. Appx. at 774-75 (internal quotation marks, citation, and alteration omitted).

Accordingly, this Court does not have jurisdiction to consider the Johnsons' claim that the defendants violated the Bankruptcy Court's discharge order. Therefore, the Court may either dismiss the claim for lack of jurisdiction or refer the claim to the Bankruptcy Court if it "would be more efficient" and in the interests of justice. *Alderwoods Grp., Inc.*, 682 F.3d at 973. Here, the Bankruptcy Court has twice denied the Johnsons' motion to reopen the 1998 bankruptcy to allow the Johnsons to pursue discharge violations. Thus, the Court concludes that referring the Johnsons' contempt claim to the Bankruptcy Court "would seem unnecessarily cumbersome and wasteful of judicial resources." *Alderwoods Grp., Inc.*, 682 F.3d at 973. Instead, the Court will dismiss the Johnsons' contempt claim.[11]

---

[11] In her report and recommendation, the magistrate judge concluded that "[a]lmost every Count in the Complaint turns on the question of whether Redstone held a valid lien on the Limestone Property at the time the Johnsons filed for bankruptcy in 1998." (Doc. 42, p. 18). Therefore, the magistrate judge began her analysis with a discussion of the issue and found that "the lien's validity has been previously determined and the issue is barred from relitigation by the doctrine of collateral estoppel." (Doc. 42, p. 18). Redstone raised a collateral estoppel argument with respect to the Johnsons' contempt claim only. (Doc. 36, pp. 16-17). Mr. Emerson and Mr. Adcock did not argue that collateral estoppel applies to any of the Johnsons' claims. (Doc. 18). Because Redstone raised collateral estoppel as a defense to the contempt claim only, the Court does not address the Johnsons' objections to the magistrate judge's collateral estoppel analysis (see Doc. 43, pp. 9-11). The collateral estoppel issue is moot with respect to the contempt claim because the Court does not have jurisdiction over the claim. Still, were it not for this Court's lack of jurisdiction over the contempt claim, this Court would dismiss the contempt claim

## B.    FDCPA

In count two of their first amended complaint, the Johnsons allege that Mr. Emerson and Mr. Adcock violated the Fair Debt Collection Practices Act by: (1) engaging in conduct the natural consequence of which was to harass, oppress, or abuse the Johnsons in violation of 15 U.S.C. § 1692d; (2) misrepresenting the character, amount, and legal status of the debt as being due and owing immediately, when, in fact, the debt had been discharged and was not due in violation of 15 U.S.C. § 1692e(2)(A); (3) using false, deceptive, or misleading methods to collect the judgment lien even though the debt is not legally enforceable in violation of 15 U.S.C. § 1692e(10); and (4) collecting money on discharged debt in violation of 15 U.S.C. § 1692f(1).  (Doc. 14, ¶ 53).[12]

---

because it is a collateral attack on Judge Coogler's decision.  The Johnsons' claim amounts to judge shopping, a practice this Court may not condone.

As a corollary to their collateral estoppel objections, the Johnsons stated that the magistrate judge "found that various courts have held that a lien existed on the Johnson's [sic] property." (Doc. 43, p. 6) (citing Doc. 42, pp. 7-9).  In the pages of the report and recommendation that the Johnsons cite, the magistrate judge did not find that various courts have held that a lien existed on the Johnsons' property; rather, in these pages of the report and recommendation, the magistrate judge recites the procedural history of the Johnsons' various legal and bankruptcy proceedings.  In any event, the Johnsons themselves allege in the first amended complaint that once recorded, the original and revived judgments created a lien on their property.  (*See* Doc. 14, ¶¶ 13, 19).

[12] The Court agrees with the magistrate judge that the Johnsons assert their FDCPA claims against Mr. Emerson and Mr. Adcock only.  In their first amended complaint, the Johnsons assert no FDCPA claims against Redstone.  All of the allegations in count two of the first amended complaint concern conduct of the "Assignees" (i.e. Mr. Emerson and Mr. Adcock).  (Doc. 14, pp. 12-14; *see also* Doc. 14, ¶ 21).  The Johnsons have not disputed this characterization of their FDCPA claim.

The Johnsons object to the magistrate judge's findings concerning the plausibility of the allegation that Mr. Emerson's and Mr. Adcock's conduct violated substantive provisions of the FDCPA. (Doc. 43, pp. 15-19). The Court need not resolve these objections at this stage because having reviewed the Johnsons' first amended complaint, the Court finds that the Johnsons have not adequately alleged that Mr. Emerson and Mr. Adcock are debt collectors within the meaning of the FDCPA.[13]

"[W]hether an individual or entity is a 'debt collector' is determinative of liability under the FDCPA." *Birster v. Am. Home Mortg. Servicing, Inc.*, 481 Fed. Appx. 579, 581-82 (11th Cir. 2012); *see Kurtzman v. Nationstar Mortgage LLC*, 709 Fed. Appx. 655, 658 (11th Cir. 2017) ("The requirements of the FDCPA apply only to professional debt-collectors.") (internal quotation marks, citation, and alteration omitted). Because the Johnsons' factual allegations, taken as true, do not allow the Court to draw the reasonable inference that Mr. Emerson and Mr. Adcock are debt collectors within the meaning of the statute, the plaintiffs have failed to state FDCPA claims against Mr. Emerson and Mr. Adcock.

---

[13] The magistrate judge stated that that "it appears uncertain whether [Mr. Emerson and Mr. Adcock] are in fact debt collectors either as persons who use the mail in a business 'the principal purpose of which is the collection of any debts,' or as persons who regularly collect debts owed to another." (Doc. 42, p. 27). But the magistrate gave the Johnsons the benefit of the doubt and found that the Johnsons' allegations allow a reasonable inference that Mr. Emerson and Mr. Adcock are debt collectors. (Doc. 42, p. 27).

The FDCPA defines "debt collector" as one who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In addition, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." *Id.* In their first amended complaint, the Johnsons state that Mr. Emerson and Mr. Adcock "are each a debt collector as that term is defined in the Fair Debt Collection Practices Act." (Doc. 14, ¶ 42; *see also* Doc. 14, ¶ 51). The Court does not credit this legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678.

The Johnsons state no facts from which the Court reasonably may infer that Mr. Emerson and Mr. Adcock "regularly collect[] or attempt[] to collect . . . debts owed or due or asserted to be owed or due another" or that they are "person[s] who use[] any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6); *see Kurtzman*, 709 Fed. Appx. at 659 ("Kurtzman's complaint totally omits any factual content that would enable us to infer that Nationstar qualifies as a debt collector. The complaint is silent regarding whether the principal purpose of Nationstar's business is collecting debts, and it only generally asserts that Nationstar regularly attempts to collect debts not owed to [it]. This is a

conclusory, formulaic recitation of the statutory language, and we need not assume it is true.") (internal quotation marks omitted; alteration in *Kurtzman*).

Accordingly, the Johnsons have not plausibly alleged that Mr. Emerson and Mr. Adcock are debt collectors within the meaning of the FDCPA. Therefore, the Court may dismiss the Johnsons' FDCPA claims. *Kurtzman*, 709 Fed. Appx. at 659 ("Because [the] complaint fails to plausibly allege sufficient facts regarding Nationstar's status as a debt collector, [the plaintiff's] FDCPA claims must be dismissed.").

In their objections, the Johnsons correctly note that Mr. Emerson and Mr. Adcock did not move to dismiss the FDCPA claims pursuant to Rule 12(b)(6) for failure to state a claim. (Doc. 43, pp. 19-20). Accordingly, the Court will ask the Johnsons to show cause why the Court should not dismiss their FDCPA claims for failure to state a claim. *Danow v. Borack*, 197 Fed. Appx. 853, 856 (11th Cir. 2006) (district court may *sua sponte* dismiss a claim where the court "provide[s] notice of its intent to dismiss the claims for failure to state a claim and an opportunity for [the plaintiff] to respond prior to dismissing the claims").

### C. Negligence/Wantonness

Under Alabama law, to state a claim for negligence, a plaintiff must allege facts showing "(1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Hilyer v. Fortier*, 227 So. 3d 13,

22 (Ala. 2017) (internal quotation marks and citation omitted).  To state a claim for wantonness, a plaintiff must allege facts showing that "the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty."  *Hilyer*, 227 So. 3d at 22 (internal quotation marks and citation omitted).

The Johnsons allege that Redstone, Mr. Emerson, and Mr. Adcock "had a duty not to interfere or circumvent the Johnsons' fresh start guaranteed by the Bankruptcy Code."  (Doc. 14, ¶ 62).  The Johnsons object to the magistrate judge's statement that "[t]he plaintiffs point to no law in their Complaint to support the assertion the 'fresh start' provided to debtors via bankruptcy relief creates a legal duty which bound the defendants."  (Doc. 42, p. 32; *see* Doc. 43).  The Court agrees with the Johnsons that they need not cite law in their complaint to sufficiently state a claim.  *See generally* Fed. R. Civ. P. 8(a)(2) (requiring pleader to provide a "statement of the claim" that shows that "the pleader is entitled to relief.").

Nevertheless, "the existence of a duty is fundamental" to the Johnsons' negligence and wantonness claims, and "[t]here must be either an underlying common law duty or a statutory duty of case with respect to the allegedly tortious conduct."  *Graveman v. Wind Drift Owners' Ass'n, Inc.*, 607 So. 2d 199, 203 (Ala. 1992).  The Court has not located, and the parties have not cited, authority

indicating that Alabama recognizes a common law or statutory duty not to interfere with a debtor's fresh start under the Bankruptcy Code. Accordingly, the Johnsons have not plausibly stated a claim for negligence or wantonness.

### D. Conversion

"Alabama law defines conversion as the exercise of dominion of another over personal property to the exclusion of or in defiance of the owner's right." *Pantry, Inc. v. Mosley*, 126 So. 3d 152, 162 (Ala. 2013) (internal quotation marks, citation, and emphasis omitted). To state a claim for conversion under Alabama law, a plaintiff must allege facts showing "that the defendant converted specific personal property to his own use and beneficial enjoyment or that the defendant destroyed or exercised dominion over property to which, at the time of the conversion, the plaintiff had a general or specific title and of which the plaintiff was in actual possession or to which he was entitled to immediate possession." *Schaeffer v. Poellnitz*, 154 So. 3d 979, 988 (Ala. 2014).

With respect to Redstone, the Johnsons allege that as a result of Redstone's recording of the revived judgment in 2007, the credit union "asserted control over the property (both real and personal) of the Johnsons," and "impaired the Johnsons' rights and ownership to their property." (Doc. 14, ¶ 20). The Johnsons object to the magistrate judge's conclusion that the Johnsons' conversion claim against Redstone fails to state a claim because the Johnsons' allegations do not

"state any conduct on the part of Redstone which amounts to a 'use' or 'misuse' – wrongful or otherwise – of the Johnsons' personal property." (Doc. 42, p. 33; Doc. 36, p. 19). The magistrate judge did not err recommending dismissal of the Johnsons' conversion claim against Redstone.

The Johnsons' conclusory recitation of the elements of a conversion claim is insufficient. (*See* Doc. 14, ¶¶ 68-73). And even if, as the Johnsons contend, the recorded revived judgment became a lien on the Johnsons' personal property (Doc. 43, p. 23), the Johnsons allege no facts from which the Court can plausibly infer that Redstone took the Johnsons' personal property, wrongfully detained the Johnsons' personal property, or exercised dominion over the Johnsons' personal property to the exclusion of the Johnsons' rights in their personal property. The Johnsons do not allege that Redstone ever entered the property subject to the lien or that Redstone prohibited the Johnsons from entering the real property to remove their personal property. There are no allegations of fact against Redstone that support a conversion claim against that defendant.

With respect to Mr. Emerson and Mr. Adcock, the magistrate judge found that the Johnsons failed to state a conversion claim because the Limestone County Sheriff, not Mr. Emerson and Mr. Adcock, seized the Johnsons' property subject to a lawful writ of execution. (Doc. 42, p. 33). The Johnsons contend that the magistrate judge's conclusion is incorrect because Mr. Emerson and Mr. Adcock

filed the application for a writ of execution. Citing *Vanhuss v. Kohn Law Firm S.C.*, 127 F. Supp. 3d 980, 992 (W.D. Wisc. 2015), the Johnsons submit that "debt collectors are not absolved of liability from an unlawful attachment even though a third party, such as a sheriff, acts upon the attachment." (Doc. 43, pp. 24-25).

*Vanhuss* is not persuasive in this context. In *Vanhuss*, the plaintiffs asserted FDCPA claims, not state law claims for conversion. In *Vanhuss*, the debt collectors did not follow the prescribed state law garnishment procedure because the debt collector "added as a 'debtor' another entity that was unnamed as a debtor at all and whose funds they had no legal right to garnish." *Vanhuss*, 127 F. Supp. 3d at 992. Therefore, the *Vanhuss* court concluded that the plaintiffs' complaint stated a claim for a violation of the FDCPA because the debtor "did not adhere to [state court] procedures." *Vanhuss*, 127 F. Supp. 3d at 992. The Johnsons do not allege that Mr. Emerson and Mr. Adcock failed to follow proper Alabama state court procedure when the defendants applied for a writ of execution. Thus, even if *Vanhuss* applies to non-FDCPA claims, the rationale does not help the Johnsons.

### E.    Trespass to Real and Personal Property

"A trespass to property is a wrong against the right of possession or entry." *Boyce v. Cassese*, 941 So. 2d 932, 945 (Ala. 2006). If a party enters property or possesses property under a legal right, entry or possession pursuant to that right cannot constitute a trespass. *Boyce*, 941 So. 2d at 945.

The Johnsons object to the magistrate judge's conclusion that "the Johnsons offer nothing to support their contention that [Mr. Emerson and Mr. Adcock] should have known that the state court's order to the sheriff was illegitimate." (Doc. 43, p. 25) (citing Doc. 42, p. 34). The Johnsons contend that the following facts plausibly state a trespass claim:

> Redstone wrongfully revived the judgment debt. . . . Redstone wrongfully continued the lien on their property. . . . It sold the debt to [Mr. Emerson and Mr. Adcock] when it had no authority to do so. . . . It received money for the transfer. . . . The Assignees, based on the wrongfully revived debt, filed a writ of execution to sell the Johnsons' property. . . . It was the Assignees who caused the Johnsons' property to be sold. . . . And it was the Assignees who purchased the property.

(Doc. 43, p. 25) (citations omitted).

Even accepting these allegations as true, as the magistrate judge explained, Redstone, Mr. Emerson, and Mr. Adcock were not parties to the seizure of the Johnsons' property. (Doc. 42, p. 34). The Limestone County Sheriff seized the property pursuant to a writ of execution that the state court found was lawful, and the Johnsons did not timely appeal the state court's decision to the Alabama Court of Civil Appeals. The Johnsons allege no facts from which the Court plausibly can infer that Redstone entered the Johnsons' property illegally, and Mr. Emerson and Mr. Adcock, if they entered the Johnsons' real property and disposed of the Johnsons' personal property, as the Johnsons' allege, did so only after purchasing the property at auction after the Limestone County Sheriff levied the property

pursuant to the state court's order. When the state court entered the order directing the Sheriff to levy the property, the Johnsons lost their right to possession of the property. Thus, the Johnsons have failed to state a trespass claim. *Drummond Co., Inc. v. Walter Industries, Inc.*, 962 So. 2d 753, 782 (Ala. 2006) ("Our law on trespass is plain that the gist of any trespass action is the interference with a right to possession of property. Absent such right of possession, there can be no action based on trespass.") (internal quotation marks and citation omitted).[14]

### F.    Declaratory Judgment

In count seven of their first amended complaint, the Johnsons seek a declaration that Alabama statutes providing for the creation and extension of a judgment lien and execution on judgment liens are in conflict with, and preempted by, the United States Bankruptcy Code. (Doc. 14, ¶¶ 82-99). "Federal law preempts a state statute when the two directly conflict." *Menchise v. Akerman Senterfitt*, 532 F.3d 1146, 1152 (11th Cir. 2008). The Bankruptcy Code and the Alabama statutes at issue do not directly conflict.

---

[14] As stated, the Sheriff acted pursuant to a court order. The Court does not hold that a principal can never be liable for an agent's trespass. *See Todd v. Modern Woodmen of America*, 620 So. 2d 591, 593 (Ala. 1993) (explaining the circumstances under which a principal may be liable for the alleged intentional torts of its agent); *Chambers v. Cagle*, 123 So. 2d 12, 15 (Ala. 1960) ("[I]f an agent or servant, in and about the business of the principal or master, commits a trespass upon the person or property of another, in the immediate presence of the principal or master, it will be presumed that it was done by the direction of the latter, who will be liable for the trespass, unless it is affirmatively shown that he did not coerce or direct the act, but did what he lawfully should to prevent it.") (internal quotation marks and citation omitted).

As the magistrate judge concluded, "[c]learly relying on state statutes which provide for the use of judicial process to collect on a debt could violate a discharge injunction (or an automatic stay) in any number of ways. However, merely creating a process, which, if abused, might violate the bankruptcy code's prohibition against such abuse does not put the two schemes in conflict." (Doc. 42, p. 36). The Johnsons argue that in this case, the defendants violated the discharge injunction, but "the Magistrate ignored the conflict and recommended dismissal" (Doc. 43, p. 26). The magistrate judge did not ignore a direct conflict; she determined that a direct conflict did not exist. In their objections to the magistrate judge's findings concerning the declaratory judgment claim, the Johnsons essentially argue that the defendants' use of a state-created process for creating, extending, and executing judgment liens is improper based on the Bankruptcy Court's discharge order. As explained above, *see* pp. 19-21, the Johnsons must make this argument to the Bankruptcy Court.

###    G.    Attorney's Fees

The Johnsons assert an independent, stand-alone claim for attorney's fees that appears to be derivative of their substantive claims. (Doc. 14, ¶ 102) (stating "Plaintiffs are entitled to attorney's fees pursuant to 11 U.S.C. §[] 105(a) and other sections, statutes, and laws cited herein for this action."). To the extent that the Johnsons seek fees associated with their § 105 contempt claim, the Court dismisses

the request because the Court does not have jurisdiction over the claim. At this stage, the only other remaining claim is the Johnsons' FDCPA claim. If the Johnsons ultimately prevail on this claim, then they may be entitled to attorney's fees, and the Court will entertain a fee petition if appropriate. *See* 15 U.S.C. § 1692k(a)(3) (court may award "a reasonable attorney's fee" to a prevailing FDCPA plaintiff).

## IV. CONCLUSION

Having reviewed *de novo* the record in this case, and for the reasons stated above, the Court orders as follows:

(1)    The Court dismisses for lack of jurisdiction the Johnsons' contempt claim;

(2)    The Court dismisses the Johnsons' negligence, wantonness, conversion, trespass, and declaratory judgment claims for failure to state a claim.

(3)    **On or before September 27, 2018**, the Johnsons shall show cause in writing why the Court should not dismiss their FDCPA claims against Mr. Emerson and Mr. Adcock for failure to state a claim because the Johnsons have not adequately pleaded that Mr. Emerson and Mr. Adock are debt collectors within the meaning of the FDCPA.

The Court directs the Clerk to please TERM Docs. 35 and 42.

**DONE** and **ORDERED** this 24th day of September, 2018.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE