## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GEORGE H. JOHNSON, III, and** | } | |
| **GLORIA J. JOHNSON,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | **Case No.:  5:14-cv-02378-MHH** |
| **v.** | } | |
| | } | |
| **REDSTONE FEDERAL CREDIT** | } | |
| **UNION, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

Defendants Heath Emerson and Danny Adcock have asked the Court to enter judgment for them on the plaintiffs' Fair Debt Collection Practices Act claim against them.  (Doc. 65).  The motion for summary judgment presents a narrow issue:  are Mr. Emerson and Mr. Adcock "debt collectors" under the FDCPA?  For the reasons discussed below, the Court concludes that Mr. Emerson and Mr. Adcock are not "debt collectors" under the FDCPA, so the Court will enter judgment for Mr. Emerson and Mr. Adcock on the Johnsons' claim.

## I.    SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). To demonstrate that a genuine dispute as to a material fact precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences in the light most favorable to the non-moving party. *Asalde v. First Class Parking Sys. LLC*, 898 F.3d 1136, 1138 (11th Cir. 2018). Accordingly, the Court views the evidence in the light most favorable to Mr. and Mrs. Johnson.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

From 1990 to 1994, George and Gloria Johnson entered into several credit agreements with Redstone Federal Credit Union for personal, family, or household purchases. (Doc. 71-1, p. 2).[1] In 1997, the Johnsons defaulted on these loans, and Redstone sued the Johnsons in the Circuit Court of Limestone County, Alabama. (Doc. 71-4, p. 2; *see also Redstone Federal Credit Union v. Johnson, et al.*, CV-97-

---

[1] Initially, the Johnsons asserted claims against several defendants. The Johnsons' FDCPA claim against Mr. Adcock and Mr. Emerson are the only claims remaining in this action. For more detailed information about the factual background of this case and the Johnsons' initial claims, please see Doc. 48.

134).[2]   On June 9, 1997, the Limestone County Circuit Court entered a consent judgment in favor of Redstone and against the Johnsons in the amount of $27,715.08. (Doc. 1, p. 3 in CV-97-134).   When the judgment was recorded on June 26, 1997, it became a lien on all property that the Johnsons owned in Limestone County.   (*See* Doc. 71-3, p. 2; *see also* Doc. 1, p. 14 in CV-97-134).

On May 3, 2007, pursuant to Alabama Code Sections 6-9-190 through 192, Redstone filed in Limestone County Circuit Court a motion for revival of the June 9, 1997 judgment.   (Doc. 71-3, pp. 2–4; Doc. 1, p. 12 in CV-97-134).   Redstone stated that it filed the motion "for the purpose of lien continuity on real estate" that the Johnsons owned.   (Doc. 1, p. 12 in CV-97-134).   In its motion, Redstone acknowledged that the Johnsons had filed and had been discharged from bankruptcy, but Redstone asserted that "the lien passed through the bankruptcy unaffected." (Doc. 71-3, p. 2) (citing *Dewsnup v. Timm*, 502 U.S. 410 (1993), and *In re Wrenn*, 40 F.3d 1162 (11th Cir. 1994)).   In its motion, Redstone stated that the Johnsons had not paid the judgment and "that the judgment lien is still fully valid."   (Doc. 71-3, p. 2).   Redstone asked the state court to revive the judgment for another 10 years.   (Doc.

---

[2] The record for the state court action is available on the Alacourt website.   The Court takes judicial notice of that record. *See Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010) (district court properly took judicial notice of documents related to the plaintiff's previous civil action because the documents "were public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'") (quoting Fed. R. Evid. 201(b); other internal citations omitted).

71-3, p. 2).  Without hearing testimony regarding the facts underlying Redstone's motion, on May 9, 2007, the Limestone County Circuit Court entered an order granting Redstone's motion and reviving the June 9, 1997 judgment.  (Doc. 71-3, p. 4; *see* Doc. 1, p. 12 in CV-97-134).

On July 25, 2013, Redstone sold the judgment debt and the judgment lien to Heath Emerson and Danny Adcock.  (Doc. 72-4, pp. 2–3; Doc. 6 in CV-97-134). After the transfer, Redstone did not participate in the Limestone County state court action.  (*See* Doc. 14, ¶ 24).  As a result of the transfer, Mr. Emerson and Mr. Adcock "asserted control" over the Johnsons' real and personal property and "impaired the Johnsons' rights and ownership to their property."  (Doc. 14, p. 6, ¶ 23; *see* Doc. 65-1, p. 1; Doc. 65-2, p. 1).

On July 29, 2013, Mr. Emerson and Mr. Adcock filed an application for writ of execution in Limestone County Circuit Court.  (Doc. 72-5, p. 2; Doc. 5 in CV-97-134).  The application stated that Mr. Emerson and Mr. Adcock seek "a writ of execution against the real property which the Lien Holders retain a perfected judgment *in rem* . . . ."  (Doc. 72-5, p. 2; Doc. 5 in CV-97-134).  The application describes the property upon which law enforcement should execute.  (Doc. 72-5, pp. 2–3; Doc. 5 in CV-97-134).

On August 5, 2013, the Limestone County Circuit Court granted the application for writ of execution.  (Doc. 72-6, p. 2; Doc. 13, p. 4 in CV-97-134).

4

The state court instructed the clerk of court to "issue a writ of execution against the real property described in the application for writ of execution[.]" (Doc. 72-6, p. 2; Doc. 13, p. 4 in CV-97-134). The state court authorized the Sheriff of Limestone County to "levy said real property and execute the judgment . . . against said real property[.]" (Doc. 72-6, p. 2; Doc. 13, p. 4 in CV-97-134). The state court also instructed the clerk of court to designate Mr. Emerson and Mr. Adcock "as those parties who now hold the judgment . . . ." (Doc. 72-6, p. 2; Doc. 13, p. 4 in CV-97-134).

On August 6, 2013, the Limestone County Circuit Clerk issued a writ of execution of judgment. (Doc. 72-6, p. 3; Doc. 13, pp. 1–2 in CV-97-134). The writ stated that the Johnsons owed $74,457.11 which included the original judgment amount, interest, fees, and costs. (Doc. 72-6, p. 3; Doc. 13, p. 1 in CV-97-134). The writ ordered any law enforcement officer in the State of Alabama "immediately to levy" the property described in the application for writ of execution. (Doc. 72-6, p. 3; Doc. 13, pp. 1–2 in CV-97-134). On August 7, 2013, a Limestone County sheriff's deputy levied the real property described in the writ of execution by serving notice of the writ of execution on the Johnsons. (Doc. 16, p. 1 in cv-97-134).

According to the Johnsons, Mr. Emerson and Mr. Adcock's effort to execute on the judgment lien violated the FDCPA. (Doc. 79, p. 10; Doc. 14, p. 12, ¶ 53). In another opinion, the Court found that the Johnsons had "not adequately allege[d]

that Mr. Emerson and Mr. Adcock [we]re debt collectors within the meaning of the FDCPA," (Doc. 48, p. 23), but that Mr. Emerson and Mr. Adcock had not moved to dismiss the Johnsons' FDCPA claim. (Doc. 48, p. 25). As a result, the Court ordered the Johnsons to show cause why the Court should not dismiss the FDCPA claim for failure to state a claim. (Doc. 48, p. 25). The Johnsons answered, (Doc. 49), and Mr. Emerson and Mr. Adcock moved for summary judgment, (Doc. 65).[3]

## III.   ANALYSIS

Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

In *Henson v. Santander Consumer USA, Inc.*, the Supreme Court held that a third-party buyer of debt that seeks to collect that debt does not fall under the "regularly collects" prong of § 1652a(6). 137 S. Ct. 1718, 1720 (2017). Accordingly, Mr. Emerson and Mr. Adcock are not "debt collectors" under the "regularly collects" definition.

---

[3] The Johnsons also moved for partial summary judgment, (Doc. 78), arguing that Mr. Emerson and Mr. Adcock violated the FDCPA, (Doc. 79, p. 10). Because they are not "debt collectors" under the statute, Mr. Emerson and Mr. Adcock could not have violated the FDCPA.

To determine whether Mr. Emerson and Mr. Adcock are debt collectors under the "principal purpose" prong of § 1652a(6), the Court considers the plain meaning of the FDCPA's text:  "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts[.]"  15 U.S.C. § 1692a(6).  The Johnsons focus on the word "business," which they define as "'a special task, duty, or function.'"  (Doc. 72, pp. 5–6 (quoting Webster's New World College Dictionary 198 (4th ed. 2001)).  And relying on this definition, the Johnsons conclude that "the principal purpose of Defendants' actions was to collect the debt, not obtain the sliver of land."  (Doc. 72, p. 7).

The FDCPA does not define the term "business," a word which can refer to "[c]ommercial enterprises" or individual "[c]ommercial transactions."  *See* Black's Law Dictionary 211 (8th ed. 2004).  But if the term "business" focused, as the Johnsons urge, on the purpose of individual actions of persons or entities attempting to collect debts, then virtually any action relating to any delinquent debt would fall under the ambit of the FDCPA.  There is no indication that Congress intended such a sweeping definition of "debt collector."  What's more, the Johnsons' reading of the "principal purpose" prong would, in most cases, make redundant the "regularly collects" prong of § 1692a(6)—a result courts typically avoid, *see, e.g.*, *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013).

7

As a result, the Court concludes that the term "business" in § 1692a(6) refers to the totality of a defendant's commercial dealings. *See McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d 1089, 1093 (9th Cir. 2020) ("Determining a business's principal purpose . . . involves comparing and prioritizing its objectives[.]"); *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 267 (3d Cir. 2019) ("As long as a business's *raison d'etre* is obtaining payment on the debts that it acquires, it is a debt collector.").

Applying that interpretation here, the Johnsons have not presented evidence that would allow reasonable jurors to conclude that Mr. Emerson and Mr. Adcock engage in "business the principal purpose of which is the collection of any debts[.]" Per their affidavits, Mr. Emerson and Mr. Adcock "occasionally buy property to repair and sell." (Doc. 65-1, p. 1). House "flipping" generally is not predicated on collecting delinquent debt. And other than the alleged debt collection in this case, the Johnsons have not presented evidence that Mr. Emerson and Mr. Adcock previously have collected a debt as part of their house-flipping business, let alone that debt collection is the "primary purpose" of that business. Even in this instance, Mr. Emerson and Mr. Adcock were not interested in the nearly $75,000 debt; they wanted the property that was subject to the judgment lien. (Docs. 65-1, 65-2). Moreover, unlike FDCPA "debt collectors," Mr. Emerson and Mr. Adcock did not use interstate commerce or the mail to collect a debt; they used the local sheriff to

levy the Johnsons' property in Limestone County, the county in which Mr. Emerson resides, to resolve a property line dispute. (Docs. 65-1, 65-2). This is not debt collection within the meaning of the FDCPA.

## IV.   CONCLUSION

For the reasons discussed above, the Court grants Mr. Emerson's and Mr. Adcock's motion for summary judgment, (Doc. 65), and denies the Johnsons' motion for partial summary judgment, (Doc. 78). The Court will enter a separate order closing the case.

**DONE** and **ORDERED** this July 6, 2020.

_Madeline H. Haikala_
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE